# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ASHLEY L. SEIG,                                    CASE NO.: 1:13-CV-672

       Plaintiff,                          JUDGE MICHAEL R. BARRETT

   v.

MERCY FRANCISCAN AT SCHROEDER,

       Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Mercy Schroeder's Motion for Summary Judgment (Doc. 8), Plaintiff Ashely Seig's response in opposition (Doc. 14), and Defendant's reply and supplemental reply (Docs. 18, 19).[1]  This matter is now ripe for review.

## I.  FACTUAL OVERVIEW

The specific admissible facts to which the parties cite in their respective briefs, as construed in the light most favorable to Plaintiff, are as follows:[2]

Plaintiff worked for the Mercy system from May 10, 2010 through May 8, 2012.  (Doc. 1, PageId 2; Doc. 8-1, PageId 58, 60).  She began her career with Mercy Franciscan Terrace as a State Tested Nurse Aid in May 2010.  (Doc. 1, PageId 2; Doc. 8-1, PageId 58).  In or about October 2011, Plaintiff transferred to Mercy Franciscan at Schroder ("Schroder") after becoming

---

[1] The reply and supplemental reply appear to be almost identical except that a table of contents, statement of the issues, and summary of the argument were included in the supplemental reply.

[2] The Court notes that Plaintiff relies on only the following in her brief in opposition to summary judgment: (1) paragraphs 7-11, 13-15, and 33 of the Verified Complaint (Doc. 1); (2) several excerpts from Plaintiff's deposition (Doc. 8-1, PageId 58, ll. 1-8 and 13-25, PageId 62, ll. 5-12); (3) three unauthenticated and unsworn statements from Plaintiff's co-workers (Doc. 14-1, PageId 174-76); and (4) the non-binding Ohio Department of Job and Family Services' Determination of Unemployment Compensation Benefits (Doc. 14-2, PageId 177-78).

a Licensed Practical Nurse. (Doc. 1, PageId 2; Doc. 8-1, PageId 59-60). Tom Schindler and Marcie Calvert supervised Plaintiff at Schroder. (Doc. 8-1, PageId 62-63).

From the outset of her employment at Schroder, Plaintiff felt like an "outsider" who was not being accepted into the workplace culture. (Doc. 8-1, PageId 62, 99).[3] Near the same time as her transfer to Schroder, Plaintiff became pregnant. One of Plaintiff's co-workers at Schroder also was pregnant at the same time. (Doc. 8-1, PageId 73). Unlike her co-worker though, Plaintiff preferred to be private about her pregnancy. (Id.).

Plaintiff's first discipline occurred on or about February 27, 2012 for an early clock-in. (Doc. 8-1, PageId 80-81; Doc. 8-3, PageId 110).[4] Plaintiff does not believe everyone knew about her pregnancy at that time, and she did not have any knowledge that her discipline was motivated by her pregnancy. (Doc. 8-1, PageId 80-81).

At some point, Plaintiff's co-workers and supervisors all became aware of her pregnancy. (See, e.g., Doc. 8-1, PageId 63-64, 74).[5] After Schindler found out, he made repeated comments to Plaintiff such as: "What's going on?"; "How is the baby?"; and "What did the doctor say?" (Id., PageId 74). Schindler made similar comments to the other pregnant employee. (Id.).[6] Plaintiff explained the reason for the questioning as: "They didn't want me there. It was obvious from the get-go, like I said, I was an outsider. I was just there because I transferred. They did

---

[3]Plaintiff testified: "From the very beginning, it was just weird. . . . I was an outsider. I mean, I had worked at Mercy for years before that, and I transferred to a new building, and that's how I was made to feel. I wasn't part of their Mercy family per se . . . . [F]rom Day One, like I said, I was an outsider. They didn't want me there, and they would find any reason to get rid of me. And it proceeded to get worse and worse down the line. . . . There were comments made when I got hired that I was only there because I transferred . . ." (Doc. 8-1, PageId 62-63).

[4]Plaintiff does not dispute the authenticity or admissibility of the February 27, 2012 coaching documentation. (See generally Doc. 14).

[5]The record cited by the parties is unclear as to when Plaintiff's co-workers and Schindler actually learned of Plaintiff's pregnancy, and Plaintiff does not indicate her briefings any specific timeframe where she believes they had actual knowledge of her pregnancy. (Doc. 14).

[6]The parties provide no information as to the employment status of that employee.

not want me in that building.  And any excuse they could find to get rid of me, they were [sic]. They wouldn't say what it was."  (Id., PageId 99). Other than inquiring about Plaintiff's job restrictions, however, Schindler never questioned Plaintiff about whether she could do her job because of her pregnancy.  (Id., PageId 95).  Another nurse also made a comment to Plaintiff along the lines of "Oh boy, you're pregnant.  This isn't going to go over well."  (Id., PageId 64). Plaintiff does not indicate that sentiment was ever condoned or expressed by Schindler, Calvert, or any other decision-maker.

Plaintiff generally avers that she also was physically injured through an act of violence initiated by a registered nurse while employed at Schroder after she became pregnant.  (Doc. 1, PageId 3).  She further avers that she "approached defendant to complain of this intimidation and hostile work environment and to seek the work for which she had been trained and under conditions that are consistent with her position and condition of being pregnant."  (Id.).  She also avers that she "was ordered to perform duties that were contrary to rules and regulations of the Ohio Department of Health and not in the best interests for the treatment of patients" at Schroder.  (Id.).

On April 19, 2012, Plaintiff was disciplined and given a final written counseling for twice leaving medication at a resident's bedside.  (Doc. 8-1, PageId 81; Doc. 8-4, PageId 111).[7]  She disagrees as to the facts upon which the discipline was based but she did not file a grievance. (Doc. 8-1, PageId 83-84).  Plaintiff concedes that Defendant believed she left the medicine at the bedside and that doing so would be a serious violation of policy.  (Doc. 8-1, PageId 85; Doc. 8-6, PageId 118).  Plaintiff testified that no one said or did anything to lead her to believe this discipline was motivated by her pregnancy.  (Doc. 8-1, PageId 85).

---

[7]Plaintiff does not dispute the authenticity or admissibility of the April 19, 2012 corrective action.  (*See generally* Doc. 14).

Thereafter, Plaintiff was involved in a public disagreement with a non-pregnant co-worker, Myka Bellisari. (Doc. 8-1, PageId 88, 92). Following that incident, Bellisari, who was a new hire with no prior disciplinary history, was immediately moved to a final written warning. (Doc. 8-5, PageId 114). Plaintiff, on the other hand, was terminated, which was the next disciplinary step based upon her disciplinary history. (Id.).

Plaintiff's May 8, 2012 termination document indicates that Plaintiff was terminated for a series of cumulative events. (Doc. 8-2, PageId 108-09).[8] Those events include: the public altercation with her co-worker, an incomplete assignment sheet, improper clock-in, advising a nurse on substitution of medications, a failure to timely respond to a resident call light, a failure to timely deliver medications, and a failure to assist a resident in the search for her glasses. (Id., PageId 108).

Plaintiff avers that she suffered a loss of income, humiliation, embarrassment, and intimidation, as well as a loss of confidence in her ability to perform in a position for which she has been trained. (Doc. 1, PageId 4).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

---

[8]Plaintiff does not dispute the authenticity or admissibility of the May 8, 2012 termination document. (*See generally* Doc. 14).

4

475 U.S. 574, 587 (1986).  The moving party has the burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson*, 477 U.S. at 249.  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## III.    ANALYSIS

Plaintiff asserts the following claims against Defendant: (1) pregnancy discrimination under 42 U.S.C. §§ 2000e(k) and Ohio Rev. Code § 4112.02(A); (2) wrongful termination under Ohio law in violation of public policy established under the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, et seq. and related state statutory law;[9] and (3) infliction of emotional distress under Ohio common law.  (Doc. 1).  Defendant moves for summary judgment on each of Plaintiff's claims.

### A.  Pregnancy Discrimination

Plaintiff alleges pregnancy discrimination under both federal and state law, and specifically, Title VII, as amended by the Pregnancy Discrimination Act, and chapter 4112 of the

---

[9] The Complaint references only Title VII, but Defendant indicates that Plaintiff also has alleged wrongful termination in violation of public policy under Ohio Rev. Code § 4112.02(A) and Ohio Rev. Code § 4123.90.

Ohio Revised Code.[10]  The federal law provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ."  42 U.S.C. § 2000e(k).  It therefore is unlawful for an employer to discharge or otherwise discriminate against an employee because she is pregnant.  42 U.S.C. § 2000e-2(a).  Similarly, Ohio Rev. Code § 4112.02(A) prohibits employers from discriminating against or discharging any employee because of the employee's sex, and the phrase "because of sex" also is read to mean "because of or on the basis of pregnancy, any illness arising out of or occurring during the course of pregnancy, childbirth, or related medical conditions."  Ohio Rev. Code § 4112.01(B).  The federal and state pregnancy discrimination claims generally are evaluated under the same standards.  *Tysinger v. Police Dep't*, 463 F.3d 569, 572 (6th Cir. 2006).

A plaintiff may survive summary judgment on a pregnancy discrimination claim using either direct or circumstantial evidence of discrimination.  *See Logan v. Denny's, Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).  Direct evidence is evidence that requires no inferences to conclude that unlawful discrimination was a motivating factor in the employer's action.  *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008).  In this case, Plaintiff does not argue that she presents direct evidence of pregnancy discrimination.  (*See* Doc. 14, PageId 164-68).[11]  Therefore, she must show discrimination by circumstantial evidence under the familiar

---

[10]Although Plaintiff's Complaint refers to "sex" discrimination as well, the arguments presented by Plaintiff demonstrate that she does not allege discrimination on the basis of her status as a female generally but only on the basis of her pregnancy.  (Doc. 14).

[11] Even if Plaintiff intended to rely upon Schindler's alleged inquiries about her pregnancy – which she does not argue anywhere in her response in opposition – (e.g., "What's going on?"; "How's the baby?"; and "What did the doctor say?"), those general inquiries are not direct evidence of discrimination.  *See e.g.*, *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 455 (6th Cir. 2004) (holding that in a disability discrimination case, a statement of concern by a supervisor that the claimant cannot perform the job in question is a valid inquiry that is not direct evidence of a bias against the handicapped); *Blaney v. Cengage Learning*, No. 1:09-cv-934, 2011 U.S. Dist. LEXIS 43780, at *11-12 (S.D. Ohio Apr. 22, 2011) (stating that direct evidence must be an actual statement proclaiming animus, not an isolated, ambiguous, or abstract comment) (citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th

*McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007).

        **1.**   ***Prima facie case***

      To establish a *prima facie* case of pregnancy discrimination, Plaintiff must show: "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Tysinger*, 463 F.3d at 573 (internal quotations omitted). Plaintiff may satisfy the fourth element by showing that she was treated less favorably than a non-protected employee who is similarly situated in all relevant respects. *Id.* at 574 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)). Defendant only challenges the fourth element of the *prima facie* case.

      Plaintiff argues that a similarly situated non-pregnant employee was granted more favorable treatment than Plaintiff. Presumably, Plaintiff intends to compare herself to Myka Bellisari, a non-pregnant co-worker.[12] Plaintiff appears to argue that because she was terminated and Bellisari was not terminated as a result of the same incident, Bellisari was treated more favorably than Plaintiff. The disciplinary history of Plaintiff and Bellisari, however, warrants the differential treatment, and Plaintiff has not shown otherwise. Prior to the incident, Plaintiff had a disciplinary record that included a coaching documentation on February 27, 2012 for an improper clock-in and a final written counseling on April 19, 2012 for twice leaving medications at a resident's bedside. In contrast, Bellisari was a new employee who did not have a prior

---

Cir. 1993)). Nor does a non-supervisor's isolated comment about her pregnancy constitute direct evidence of discrimination. *Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 432-33 (6th Cir. 2009).

    [12] Plaintiff's response in opposition does not specifically identify the comparable non-protected employee. (Doc. 14, PageId 166.) Myka Bellisari, however, is the only potential comparator that the Court is able to identify from the briefings.

disciplinary record.  As a result of the incident, Plaintiff was moved to the next step of her progressive discipline, which was termination.  Bellisari, on the other hand, bypassed the first two steps of the progressive discipline and was immediately put on the third step of discipline right before termination.  Given the discrepancies in the disciplinary histories, the Court cannot conclude that Plaintiff and Bellisari were similarly situated.  *Campbell v. Hamilton* County, 23 F. App'x 318, 325 (6th Cir. 2001) ("Differences in . . . disciplinary history may establish that two employees are not similarly situated."); *see also Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 404 (6th Cir. 2014) ("'[T]o be deemed similarly situated in the disciplinary context, the individuals with whom the plaintiff seeks to compare his/her treatment must have . . . engaged in the same conduct without such distinguishing or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'") (quoting *Ercegovich*, 154 F.3d at 352) (additional internal quotations omitted).  As such, the Court cannot conclude that Plaintiff was treated less favorably than a similarly situated non-protected employee.[13]

---

[13]In her response in opposition, Plaintiff does not dispute that the disciplinary histories were different or the basis/legitimacy of her prior discipline.  (*See* Doc. 14).  Rather, she appears to contend that she and Bellisari engaged in unequal conduct such that it was unfair to discipline Plaintiff at all.  As Defendant points out, her argument lacks any factual support, as the only evidence relied upon by Plaintiff are unauthenticated, unsworn statements of purported co-workers that Plaintiff offers for the truth of the matters asserted (Doc. 14, PageId 159), which are inadmissible.  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 481 (6th Cir. 2008) (holding that the district court "improperly considered" unsworn, hearsay evidence in deciding to grant a motion for summary judgment); *Terrenos v. Valley Enters. of Ohio, LLC*, No. 1:10-cv-01555, 2011 U.S. Dist. LEXIS 127419, at *21 (N.D. Ohio Nov. 3, 2011) ("[T]he Court does not construe any changes to Federal Rule of Civil Procedure 56 as abolishing the requirement that documents submitted in support of or in opposition to a motion for summary judgment must be sworn documents of evidentiary quality."); *Pruitt v. Habib*, No. 3:10-cv-108, 2011 U.S. Dist. LEXIS 2738, at *16 (W.D. Ky. Jan. 11, 2011) ("Unsworn documents or reports cannot be considered in a motion for summary judgment."); *Fox v. Brown Mem. Home, Inc.*, No. 2:09-cv-915, 2010 U.S. Dist. LEXIS 131543 (S.D. Ohio Dec. 2, 2010) (finding that an unsworn document was not properly before the district court for consideration in connection with a motion for summary judgment).  Inadmissible evidence is not properly considered on summary judgment. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("'[E]vidence submitted in opposition to a motion for summary judgment must be admissible. . . . Hearsay evidence . . . must be disregarded.'") (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc*., 130 F.3d 1185, 1189 (6th Cir. 1997)).  Further, Plaintiff has presented no evidence that non-protected employees who engaged in conduct similar to her conduct were not disciplined, and the Court is not required to search the record for some piece of evidence that might stave off summary judgment.  *U.S. Structures*, 130 F.3d at 1191 (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)).

Plaintiff's other attempts to demonstrate causation are insufficient to create a genuine issue of material fact. Plaintiff relies on the ultimate decision from the Ohio Department of Job and Family Services for Unemployment Compensation, which is not demonstrably tied to any specific facts and is not binding on this Court. *Murray v. Kaiser Permanente*, 52 F. App'x 725, 727 (6th Cir. 2002) (recognizing that the decision of the Ohio Department of Job and Family Services has no bearing on an employment discrimination case in federal court); *see also Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir. 2009) (affirming district court's decision to give no evidentiary weight to an Ohio Civil Rights Commission determination where the conclusions were not tied to any specific facts and it was unclear what evidence the investigator considered in reaching her conclusion). That legal conclusion thus fails to create a genuine issue of material fact as to causation.

Next, Plaintiff makes conclusory and unsupported legal statements in an attempt to demonstrate a nexus between her pregnancy and termination. Specifically, she states:

> On numerous occasions, Plaintiff requested Defendant to provide proper work accommodation due to her pregnancy and complained about the intimidation and hostile work environment. However, Defendant failed to take any action to provide Plaintiff with alternative assignment or light duty. Defendant was reluctant to provide Plaintiff with such accommodation as permitted by EEOC. This clearly shows that [Defendant had an] indifferent attitude towards Plaintiff.

(Doc. 14, PageId 166-67). The only evidentiary support provided for these statements are the similarly conclusory and vague statements in Plaintiff's Verified Complaint. (Doc. 1, PageId 3). "At the summary judgment stage, Plaintiff may not rely on [her] legal conclusions in the Complaint, even if verified." *Terrenos v. Valley Enters. of Ohio*, No. 1:10-cv-01555, 2011 U.S. Dist. LEXIS 127419, at 15 (N.D. Ohio Nov. 3, 2011). "Although statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment," affidavits that contain only conclusory allegations without supporting facts and naked

conclusions of law are insufficient to defeat a motion for summary judgment. *Sigmon v. Appalachian Coal Props.*, 400 F. App's 43, 49 (6th Cir. 2010) (citing *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. Ohio 2009). Here, the Verified Complaint is entirely devoid of any details as to when she complained, how many times she complained, to whom she complained, what she complained about each time, and what specific response was given by those to whom she complained. Given this absence of specifics, it cannot be said that the statements in the Verified Complaint are sufficient to create a genuine issue of material fact as to causation.[14] Accordingly, Plaintiff has not met her burden for the fourth element of her *prima facie* case, and summary judgment on her pregnancy discrimination claim is warranted.[15]

## 2. **Legitimate Business Reasons and Pretext**

If, however, Plaintiff was able to make a *prima facie* case of discrimination, then the burden would shift to Defendant to prove a legitimate, nondiscriminatory basis for the adverse action. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). If Defendant carries that burden, then Plaintiff must show that the legitimate, nondiscriminatory basis is, in

---

[14] Although Plaintiff's position is less than clear, the Court notes that Plaintiff has presented no evidence that she was treated differently than a non-protected employee similar in his/her ability to work with respect to any of her requests or complaints. As the Sixth Circuit has recognized, "the Pregnancy Discrimination Act does not require preferential treatment for pregnant employees. Rather, it mandates that employers treat pregnant employees *the same* as nonpregnant employees who are similarly situated with respect to their ability to work." *Tysinger v. Police Dep't*, 463 F.3d 569, 575 (6th Cir. 2006); *see also Reeves v. Swift Transp. Co., Inc.*, 446 F.3d 637 (6th Cir. 2006) (rejecting a claim where plaintiff was seeking preferential light duty treatment as beyond the mandates of the Pregnancy Discrimination Act).

[15] Although not argued by Plaintiff (*see* Doc. 14), the Court notes that "[t]emporal proximity between the employer's learning of an employee's pregnancy and an adverse employment action taken with respect to that employee" may be sufficient to support an inference of pregnancy discrimination. *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006). However, "proximity alone may not survive summary judgment . . . nor does it necessarily imply causation." *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 826 (6th Cir. 2002). Here, Plaintiff has not identified when the employer became aware of her pregnancy or how that relates to her termination (*See generally* Doc. 19), and it is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment and that the Court is not required to search the record for some piece of evidence that might stave off summary judgment, *U.S. Structures, Inc.*, 130 F.3d at 1191 (citing *Street.*, 886 F.2d at 1479-80).

fact, only a pretext to hide the discrimination.  *Id.* at 256 (citing *McDonnell Douglas*, 411 U.S. at 804-05).

Here, Defendant has met its burden of articulating legitimate, non-discriminatory business reasons for terminating Plaintiff.  Specifically, Defendant set forth evidence showing that Plaintiff was terminated on May 8, 2012 as the last step of her progressive discipline for a series of cumulative events, which included a public altercation with a co-worker, an incomplete assignment sheet and improper clock-in, a prohibited substitution of medications between residents, a failure to timely respond to a resident call light, a failure to timely deliver a resident's medication, and a failure to assist a resident in a search for her glasses.  Therefore, the burden shifts to Plaintiff to prove pretext.

To prove pretext, Plaintiff must produce sufficient evidence from which the jury could "reasonably reject [Defendant's] explanation" and infer that Defendant "intentionally discriminated" against her.  *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).  To do so, Plaintiff must allege more than a dispute over the facts upon which her discharge was based.  *Id.* at 494.  She must set forth evidence that demonstrates Defendant did not "honestly believe" in the proffered non-discriminatory reasons for the adverse employment action.  *Id.*  To determine whether Defendant had an honest belief, the Court must consider whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made.  *Id.*  This Court must not second guess the business judgment of the employer, but simply evaluate "whether the employer gave an honest explanation of its behavior."  *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).

Plaintiff may show pretext in three interrelated ways.  First, she can show that the proffered reason had no basis in fact.  To do so, she must produce evidence to show that the

reasons given by the employer simply did not happen. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Second, she can show that the proffered reason was insufficient to motivate the adverse action. *Id.* Ordinarily, to establish the insufficiency of the proffered reasons, the plaintiff must show that "other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated" it actions towards the plaintiff. *Id.* Third, she can adduce evidence that shows the proffered reason did not actually motivate the adverse action. *Id.* When a plaintiff attempts to prove pretext in this manner, the plaintiff

> admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

*Id.*

In evaluating pretext, courts should not apply the three tests in a formalistic manner. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* The court must "ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong [that evidence] is." *Id.*

Although Defendant provided multiple reasons for Plaintiff's termination, Plaintiff's pretext argument focuses solely on Defendant's reliance on the incident between Plaintiff and Bellisari. (Doc. 14, PageId 167). She contends that the incident lacked any basis in fact or was insufficient to warrant her termination. In support of her pretext argument, Plaintiff relies only on evidence that Defendant challenged as insufficient to create a genuine issue of material fact.

(Doc. 14, PageId 167).  As this Court previously has agreed that the evidence cannot create a genuine issue of material fact, Plaintiff cannot rely on it to show pretext.  In any event, Plaintiff has not presented evidence that would show that the incident simply did not happen or to show that the action was insufficient to motivate the adverse action.  Plaintiff does not contest that the there was a confrontation with Bellisari, but instead disputes the facts of the incident, which is insufficient to establish pretext.  Further, she has not set forth evidence that a similarly situated non-pregnant employee was treated more favorably than her, as explained previously.

While Plaintiff does not address the third method of proving pretext, the Court nevertheless considers it here.  Giving Plaintiff a favorable construction, her evidence of pretext includes:  (1) an isolated comment by a co-worker about her pregnancy; (2) innocuous inquiries by Schindler about her pregnancy; and (3) an incident involving Bellisari after which Plaintiff was terminated as the next step in her progressive discipline while Bellisari was immediately placed on the third step of her progressive discipline despite no prior disciplinary history.  That evidence singly and in combination fails to show that an illegal motivation was more likely than that offered by Defendant.  As previously explained, the differential discipline of Plaintiff and Bellisari was warranted based on their different disciplinary histories, and Plaintiff has not otherwise shown that Defendant acted inconsistently by imposing such discipline under the circumstances.[16]  Further, the isolated comment by a co-worker lacks any connection to a decision-maker or to her termination, and thus, fails to raise an inference of a discriminatory motive.[17]  Likewise, the innocuous inquiries of Schindler about Plaintiff's pregnancy are insufficient to transform what otherwise has been an honest explanation for Defendant's conduct

---

[16] In any event, as previously explained, the unsworn and unauthenticated statements upon which Plaintiff relies are inadmissible.  Moreover, the dates of the statements are different and not all coincide with the date of the incident involving Plaintiff and Bellisari.

[17] Indeed, Plaintiff does not even rely on this evidence in her pretext argument.  (Doc. 14, PageId 167).

into a pretext for discrimination.[18]  Indeed, Plaintiff denied that any of the decision-makers ever said or did anything to lead her to believe her discipline was motivated by her pregnancy.[19] Therefore, Plaintiff has not met her burden as to pretext and the Court will not second guess the business judgment of Defendant.[20]

### 3. Mixed motive

Alternatively, Plaintiff appears to argue that her claim should be analyzed as a "mixed motive" case.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003).  This, however, does not relieve Plaintiff of the ultimate burden of demonstrating at least a genuine issue of material fact as to whether pregnancy discrimination was at least a *motivating factor* in the decision to terminate her.  *Tysinger*, 463 F.3d at 578 (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286 (4th Cir. 2004) (en banc) (observing post-*Desert Palace* that regardless of the type of evidence offered, direct or circumstantial, and regardless of the theory asserted, single motive or mixed motive, the ultimate question remains the same:  whether sufficient evidence has been produced to support a finding that the protected trait actually motivated the employer's adverse action)).  Under any of these theories, Plaintiff's evidence falls short of creating a genuine issue of material fact for the same reasons set forth previously in the analysis of her discrimination claim.

### B. Wrongful Termination

---

[18] Plaintiff testified that the other pregnant employee received similar comments from Schindler, but no evidence has been presented to show that she was subject to any discipline or unfavorable treatment.

[19] Plaintiff does not specifically point to the temporal proximity between Defendant learning of her pregnancy and her termination as evidence of pretext.  However, the law is well settled that timing alone is insufficient to establish pretext.  *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) ("[T]he law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.") (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)).

[20] Indeed, Plaintiff testified that Defendant was motivated from the outset of her employment to get rid of her because of a non-pregnancy reason, that is, her status as an "outsider."

14

According to the Complaint, Plaintiff's wrongful termination claim under Ohio law is premised on a violation of Title VII. Defendant represents that Plaintiff also has indicated that she relies on the public policy established under the Ohio Civil Rights Act in Ohio Rev. Code § 411.02(A) and the discrimination provisions of Ohio's Workers' Compensation law in Ohio Rev. Code § 4123.90. While unclear, Plaintiff also appears to suggest that her wrongful discharge claim is based on the public policy against the discharge of whistleblowers as set forth in Ohio Rev. Code. § 4113.52.

Employment in Ohio is governed, with some exceptions, by the employment at-will doctrine. *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 312 (2007). An employer generally may terminate an at-will employee for any reason at any time and that terminated at-will employee may not sue the employer for wrongful discharge. *Id.* Ohio, however, recognizes an exception to the at-will doctrine for a wrongful discharge claim when the discharge violates public policy, which is commonly referred to as a *Greeley* claim. *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St. 3d 77, 78 (2002) (citing *Greeley v. Miami Valley Maintenance Contractors*, 49 Ohio St. 3d 228 (1990)). To prove a claim for wrongful discharge in violation of public policy, a plaintiff must satisfy four elements: (1) a clear public policy manifested in state or federal law (clarity element); (2) dismissal under circumstances like those involved here would jeopardize that public policy (jeopardy element); (3) dismissal motivated by conduct related to the public policy (causation element); and (4) lack of an overriding business justification by the employer for the dismissal (overriding justification element). *Collins v. Rizkana*, 73 Ohio St. 3d 65, 69-70 (1995). The first two elements present questions of law to be determined by the Court while the last two elements present questions of fact for the trier of fact. *Id.; see also Hale v. Volunteers of America*, 158 Ohio App. 3d 415, 424 (Ohio Ct. App. 2004).

15

Where an at-will employee's common-law claim embodies only the public policy set forth in Ohio Rev. Code § 4113.52 (the whistleblower statute), the employee must strictly comply with the requirements of that statute. *Kulch v. Structural Fibers*, 78 Ohio St. 3d 134, 162 (1997); *see also Hale*, 158 Ohio App. 3d at 425. Here, Plaintiff sets forth no argument or evidence that she has complied with the requirements of § 4113.52. Accordingly, Plaintiff cannot maintain a public policy claim based on § 4113.52.

While an at-will employee may maintain a common-law public-policy claim regardless of whether she complied with the strict requirements of § 4113.52, to do so she must identify "a source of public policy separate from the public policy embodied in [§ 4113.52]." *Kulch*, 78 Ohio St. at 162; *see also Hale*, 158 Ohio App. 3d at 425. The only policies so identified are Title VII, Ohio Rev. Code § 4112.99 and Ohio Rev. Code § 4123.90. Those statutes embody clear public policies against discrimination and/or retaliation. *Leininger*, 115 Ohio St. 3d at 315 (holding that ADA and Ohio Rev. Code § 4112.14 satisfy the clarity element); *Sutton v. Tomco Machining, Inc.*, 129 Ohio St. 3d 153, 160 (2011) (concluding that Ohio Rev. Code § 4123.90 "expresses a clear public policy prohibiting retaliatory employment action against injured employees").[21]

Plaintiff's claim fails, however, on the jeopardy element. In cases such as this "where the right and remedy are part of the same statute that is the sole source of the public policy opposing the discharge, the test for determining the jeopardy element is whether the remedy provisions

---

[21] Plaintiff does not explain or even address how the workers' compensation statute is applicable here; nevertheless, it will be addressed since it was raised by Defendant and not countered by Plaintiff. Further, Plaintiff's response in opposition does not indicate that she is arguing that she was retaliated against for reporting that she was ordered to perform duties that were contrary to the rules and regulations of the Ohio Department of Health and not in the best interest for the treatment of residents at Schroder. (*See* Doc. 14, PageId 171-72). She also has identified no specific rules or regulations and has provided insufficient evidence to demonstrate she told anyone at Schroder or the Ohio Department of Health about the order or the potential violations. (*See id.*, PageId 159, 171-72). Therefore, even if she had made such an argument, she would not have established a clear public policy, that her termination would jeopardize the public policy, or that her dismissal was motivated by conduct related to the public policy.

adequately protect society's interest by discouraging the wrongful conduct." *Sutton*, 129 Ohio St. at 161 (citing *Leininger*, 115 Ohio St. 3d at 317). Given that Ohio courts repeatedly have held that Title VII, Ohio Rev. Code § 4112, and Ohio Rev. Code § 4123.90 provide adequate remedies to protect the public interest against discriminatory and/or retaliatory terminations, Plaintiff is unable to satisfy the jeopardy element of her wrongful termination claim. *Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004) (holding that Title VII and Ohio Rev. Code § 4112 provide adequate remedies to vindicate Ohio's public policies against unlawful employment discrimination and therefore adequately protect the society's interests); *Green v. CGI Technologies & Solutions*, 911 F. Supp. 2d 513 (N.D. Ohio Nov. 28, 2012) (recognizing that both Title VII and Ohio Rev. Code § 4112 provide adequate remedies to protect society's interests); *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St. 3d 351, 357 (2007) ("[A]n employee who is terminated from employment while receiving workers compensation has no common-law cause of action for wrongful discharge in violation of the public policy underlying R.C. § 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act.").

Given the above conclusions, Plaintiff's wrongful discharge claim cannot survive summary judgment. As such, the Court need not address her remaining arguments as to causation and overriding business justifications. Nevertheless, the Court finds that Plaintiff's claim would fail on these two grounds as well. As explained above, Plaintiff has not shown the requisite causal connection or met her burden of proving pretext. Although the Court recognizes that the standard for proving pretext and proving a lack of an overriding business justification are not necessarily identical, Plaintiff has not explained beyond the pretext arguments how Defendant otherwise lacked a justification that was essential and necessary to the operation of

the business.  *See* OJI CV § 537.17(4) & cmt.  The failure to establish pretext thus guides the conclusion here, and Plaintiff's claim would fail on these bases as well.

### C.  Infliction of Emotional Distress

Plaintiff asserts claims for both negligent and intentional infliction of emotional distress. Both claims are discussed below.

In Ohio, "'liability for negligent infliction of emotional distress arises where a bystander to an accident suffers serious and foreseeable emotional injuries.'"  *Williams v. York Int'l Corp.*, 63 F. App'x 808, 814 (6th Cir. 2003) (quoting *Tohline v. Cent. Trust Co.*, 48 Ohio App. 3d 280 (Ohio Ct. App. 1988)).  "Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context."  *Id.* (citing *Ray v. Libbey Glass, Inc.*, 133 F. Supp. 2d 610, 620 (N.D. Ohio 2001); *Hatlestad v. Conrail*, 75 Ohio App. 3d 184 (Ohio Ct. App. 1991)).  Given that Plaintiff's claim is one for negligent infliction of emotional distress in the employment context, it cannot survive summary judgment.

As for intentional infliction of emotional distress, Plaintiff must show that: (1) Defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) Defendant's conduct was extreme and outrageous; (3) Defendant's actions proximately caused Plaintiff's psychic injury; and (4) the mental anguish Plaintiff suffered was serious.  *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App. 3d 73 (Ohio Ct. App. 1991); *see also Yeager v. Local Union 20, Teamsters*, 6 Ohio St. 3d 369 (1983), *abrogated on other grounds by*, *Welling v. Weinfield*, 113 Ohio St. 3d 464 (2007).  Extreme and outrageous conduct occurs "only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."  *Yeager*, 6 Ohio St. 3d at 375.

18

Having reviewed the evidence presented, the Court concludes that Plaintiff has not provided sufficient evidence to survive summary judgment on her claim for intentional infliction of emotional distress.  Plaintiff's claim is inextricably intertwined with her claim for pregnancy discrimination.  Not only has Plaintiff failed to prove discrimination for the reasons set forth previously, but it also is well established under Ohio law that "'an employee's termination, even if based upon discrimination, does not rise to the level of extreme and outrageous conduct without proof of something more.'"  *Bolander v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005) (quoting *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)).  "'If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress.'"  *Id.*  Thus, to survive summary judgment Plaintiff must present facts beyond an alleged discriminatory termination that rise to the level of extreme and outrageous.  She has not done so in this case.

At best, Plaintiff's additional support for her claim includes (1) her status as an unmarried pregnant woman in her later stages of pregnancy at the time of her termination, (2) unsupported and conclusory statements in her Verified Complaint that Defendant refused to accommodate her during the duration of her employment and pregnancy and terminated her after learning she would not perform her duties in contravention to the rules and regulations of the Ohio Department of Health, and (3) unsupported and conclusory statements that Defendant said she was not eligible for rehire which resulted in several employment denials.  Even accepting the evidence as true and construing it in the light most favorable to Plaintiff, those actions of Defendant fall well short of the extreme and outrageous conduct that is required to maintain a claim for intentional infliction of emotional distress.  Indeed, Ohio has narrowly defined "extreme and outrageous conduct."  *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 619

19

(6th Cir. 2014) ("'[T]o say that Ohio courts narrowly define "extreme and outrageous conduct" would be something of an understatement.'") (quoting *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" cannot sustain a claim of intentional infliction of emotional distress. *Id.* (quoting *Yeager*, 6 Ohio St 3d at 373). The outrageous behavior that supports this type of claim requires something beyond a "tortious or even criminal" intent to cause harm. *Yeager*, 6 Ohio St. at 374-75. Under that standard, courts have dismissed intentional infliction of emotional distress claims involving significantly more severe conduct than that presented here. *Wolfe v. Thermo Fischer Scientific, Inc.*, No. 2:08-cv-933, 2009 U.S. Dist. LEXIS 41702, at *8-9 (S.D. Ohio May 4, 2009) (finding insufficiently extreme or outrageous an employer's sexually-charged remarks, false charge of sexual harassment and false imprisonment of the plaintiff for four hours with no food or water while interrogating, intimidating, harassing and embarrassing her); *Rubin v. Ford Motor Co.*, No. 1:04-cv-836, 2006 U.S. Dist. LEXIS 51522, at *14, 16-17 (S.D. Ohio July 27, 2006) (finding employer's "intentional, offensive and unjustified pattern of conduct (both verbal and physical)," including poking and swearing at the plaintiff, to be insufficiently extreme or outrageous); *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269-70 (N.D. Ohio 1993) (finding co-workers' display of photographs of scantily clad and naked women and the plaintiff's receipt of "pornographic, explicit photographs and sex toys in her locker" not intolerable in a civilized society and therefore not extreme or outrageous); *Hill v. Vill. of West Lafayette*, No. 95CA27, 1996 Ohio App. LEXIS 3721, at 12-13 (Ohio Ct. App. May 24, 1996) (finding employer's pattern of harassment, which included false disciplinary charges and defamatory conduct against plaintiff, was insufficiently extreme or outrageous); *Boggs v. Avon Prods., Inc.*, 56 Ohio App. 3d 67, 73 (Ohio Ct. App. 1990) (allegations that plaintiff's supervisor

continually harassed and threatened him after he suffered an accident, knowing that such conduct would cause him anxiety, did not rise to level of "atrocious," "utterly intolerable," or "outrageous").

Accordingly, Plaintiff's claims for negligent and intentional infliction of emotional distress must be dismissed.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 8) is **GRANTED**, and all of Plaintiff's claims are hereby DISMISSED with prejudice.  This case shall be CLOSED and TERMINATED from the docket of this Court.

**IT IS SO ORDERED**.

<u>s/Michael R. Barrett</u>
Michael R. Barrett, Judge
United States District Court